IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 7, 2004

**STATE OF TENNESSEE v. JOE CALVIN BOYCE**

**Direct Appeal from the Circuit Court for Hardeman County**
**Case No. 6651    Jon Kerry Blackwood, Judge**

_____

**No. W2004-01159-CCA-R3-CD  - Filed January 26, 2005**

_____

A Hardeman County jury convicted the Defendant, Joe Calvin Boyce, of one count of theft of property valued between $1,000 and $10,000 and one count of attempted theft of property valued between $500 and $1,000.  The trial court sentenced the Defendant, as a career offender, to twelve years in prison for the theft conviction and six years for the attempted theft conviction, to be served concurrently.  The Defendant appeals, contending: (1) the evidence presented at trial is insufficient to sustain his convictions; and (2) the trial court erred when it sentenced him.  On appeal, we vacate the Defendant's six year sentence for attempted theft, and impose a sentence of eleven months and twenty-nine days for that conviction.  The Defendant's convictions and his sentence for theft are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part;**
**Vacated in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Gary F. Antrican, Somerville, Tennessee (on appeal) and Karen Tucker Fleet, Bolivar, Tennessee (at trial), for the Appellant, Joe Calvin Boyce.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Anna M. Banks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

The charges in this case arise from incidents that occurred in December of 2001.  A Hardeman County Grand Jury indicted the Defendant on one count of theft of property valued between $1,000 and $10,000, and one count of attempted theft of property valued between $500 and $1,000.  At the Defendant's trial for these offenses, Wendy Siler testified that she is the Vice-

President of First South Bank, a position that she also held in December of 2001. She said that, on approximately December 4, 2001, a savings account, account number 6983522, was opened with an initial deposit of $100 in cash at the Grand Junction branch of her bank. Siler said that, on the same day, a check was deposited into the savings account in the amount of $5,846.16, and, at the same time, the original $100 cash deposit was withdrawn. On December 7, 2001,[1] a savings withdrawal from account number 6983522 in the amount of $1,500 was cashed by the Bolivar branch of the bank. Siler testified that, on December 10, 2001, after 2 p.m., $3,500 was withdrawn from the same savings account. Siler said that the name written on all of the withdrawals was Willie M. Porter. Siler also testified that both withdrawal slips had a stamp indicating that "teller 14" had processed these withdrawals.

Siler testified that, on December 11, 2001, she received the original deposit check, in the amount of $5,846.16 back from the Federal Reserve with a notification that the check was a fraudulent item. After receiving this notice, Siler said that she called Pat Baker, who is an officer with the Bolivar Police Department, to inform him of the fraudulent check. Siler said that the savings account had a balance of $800, and she called the officer in an attempt to get back the $5,000 that had been withdrawn from the savings account. Siler said that Officer Baker told her that, if someone came to the bank in an attempt to withdraw the remaining $800, she should call the police immediately. Siler said that, shortly thereafter, a man drove through the drive-up window and presented a withdrawal slip for $800 on this account. She said that the bank employee immediately called the police, and the police subsequently apprehended the man who presented the withdrawal slip and identification.

On cross-examination, Siler testified that it is not the usual practice of the bank to allow a customer to open a savings account with an out-of-state check and immediately be allowed to draw money from the account. She said that, usually, the check is placed on hold. She conceded that the bank violated its ususal practice in this case. Siler testified that, when customers open accounts, they are required to show picture identification. Siler admitted that she had no personal knowledge of who made the deposits or the two withdrawals.

Officer Baker testified that, in December of 2001, he went to the bank and met with Siler in response to her call about a fraudulent check. The officer said that he met with Siler, she informed him of the situation, and he suggested that the bank wait to see if someone returned to withdraw the remaining funds from the account. He said that, on the same day, he received a call that someone was, in fact, attempting to withdraw the remaining money from the account. He said that he arrived at the bank and two people were in a car at the drive-up window attempting to obtain the money from the savings account. As they began to drive off, the officer blocked the entrance with his car. The officer said that there were two people in the car that he stopped, a man and a woman. The officer identified the Defendant as the man in the car. He said that, after he stopped the Defendant, the officer went into the bank and retrieved the withdrawal slip that was filled out for the remaining

---

[1] The witness testified that, in all likelihood, the withdrawal was made on Friday, December 7, 2001, after 2 p.m. and, therefore, the bank records indicated that it occurred on Monday, December 10, 2001, the following business day.

$800. He also obtained the identification card, that went with the account, that pictured a man named Willie M. Porter. The officer said that he arrested the Defendant.

On cross-examination, the officer said that the picture on the identification card was not a photograph of the Defendant. The officer also stated that the Defendant was not driving the car when he apprehended it, but there was a woman driving the car.

Ashley Hodge testified that she was working as a teller at First South Bank in December of 2001. She said that she was "teller 14" and that she handled the withdrawal of $1,500 from account number 6983522 on December 10, 2001. She said that this transaction actually occurred after 2 p.m. on Friday, December 7, 2001. Hodge identified the Defendant as the man who made this withdrawal. She said that he presented her an identification card with his information on it, including the name Willie M. Porter. She said that, when she examined the identification card more closely later, she could tell that the picture on the card was not a photograph of the Defendant. She was sure, however, that the Defendant was the man who presented this identification card. Hodge testified that the Defendant returned on December 10, 2001, and withdrew $3,500 from the account, presenting the same identification. She said that she handed the Defendant the money and that he took this money. Hodge testified that, on December 11, 2001, the Defendant came to the bank again and attempted to withdraw $800 from the account. She said that she called the police because she had previously been told by Siler to do so. Hodge testified that the Defendant was then apprehended by the police.

On cross-examination, Hodge testified that she did not really look at the picture on the identification card when she gave the Defendant the money. She said that she was sure, however, that she gave the money to the Defendant because she spoke with him and she "kn[e]w that [she] gave him that money." Hodge also testified that, on December 11, 2001, when the Defendant was in the car with someone else and she did not know who was driving, but she could clearly see the Defendant pass her the withdrawal slip and identification card because the car pulled into the drive-through lane that was directly in front of the teller's window. She said that she saw the Defendant fill out the withdrawal slip for $800.00.

Frances Gowan was called by the Defendant to testify. She said that she has worked at First South Bank for thirty-eight years. She said that she is the one who opened the savings account on December 4, 2001. She said that the individual brought in $100, in cash, to open the account and then, the next day, the same individual brought in a $5800 check. Gowan said that the individual who opened the account used a temporary drivers license as identification with the name Willie M. Porter. Gowan testified that she viewed a photographic line up by the police in an attempt to get her to identify the man who opened the account, and she was unable to identify anyone from those pictures.

Based upon this evidence, the jury convicted the Defendant of theft of property valued between $1,000 and $10,000, and attempted theft of property valued between $500 and $1,000.

At the Defendant's sentencing hearing, at which the Defendant requested probation, the trial court stated:

> [T]he Court finds the [D]efendant to be a career offender and sentences him to . . .
> 12 years in the Department of Correction in the first count and six years in the
> Department of Correction in the second count, at 60 percent. These sentences are to
> run . . . concurrent to each other but consecutive to any unserved sentence. The Court
> denies any relief based upon the absolutely horrible prior record in this case. He will
> be given credit for 32 days.

## II. Analysis

On appeal the Defendant contends that the evidence is insufficient to sustain his convictions and that the trial court erred when it sentenced him.

### A. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of theft of property valued between $1,000 and $10,000, and attempted theft of property valued between $500 and $1,000. A person commits theft of property "if, with intent to deprive the owner of property, the person knowingly obtains or

exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). Theft of property is a Class D felony if the value of the property obtained is between $1,000 and $10,000. Tenn. Code Ann. § 39-14-105(3) (2003).

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3) (2003). Criminal attempt is an offense one classification lower than the most serious crime attempted. Tenn. Code Ann. § 39-12-107 (2003). Therefore, attempted theft of property valued between $500 and $1,000 is a Class A misdemeanor. See Tenn. Code Ann. § 39-14-105(2).

The Defendant contends that the evidence presented at trial is insufficient to sustain his conviction for theft or attempted theft. Specifically, the Defendant asserts that there was no proof that he was the person who opened the savings account or who deposited the fraudulent check in the amount of $5,846.16. Furthermore, the Defendant asserts that there was no proof that he intended to deprive anyone of property because there was no evidence that he did not have the consent of Willie M. Porter to make the withdrawals. We cannot agree with the Defendant's assertions. Considering the evidence in the light most favorable to the State, it is sufficient to sustain the Defendant's convictions. The evidence produced at trial showed that a person purporting to be Willie M. Porter opened a savings account at First South Bank. Gowan, the bank officer who opened this account, was unable to identify the Defendant as the man who opened this account, but she identified the photo identification that was used to open this account. Siler testified that a fraudulent check was deposited into the savings account in the amount of $5,846.16. Hodge testified that the Defendant made two withdrawals from the savings account, totaling $5,000, that she processed. She identified the Defendant as the man who made these withdrawals, and she identified the photo identification that the Defendant used when he withdrew the money. The photo identification used by the Defendant at the time of the withdrawals was the same as the identification used by the person who opened the savings account. This evidence is sufficient to sustain the Defendant's conviction for theft of property valued between $1,000 and $10,000.

Similarly, the evidence is also sufficient to sustain the Defendant's conviction for attempted theft of property valued between $500 and $1,000. The evidence proved that the Defendant went to the bank and attempted to withdraw $800 from the savings account. Hodge, the same teller who conducted the Defendant's previous transactions, recognized the Defendant and saw him fill out the

withdrawal slip for $800. The Defendant again presented the identification card of Willie M. Porter. Hodge clearly saw the Defendant pass her the withdrawal slip and identification card because the car that he was in pulled into the drive-through lane that was right beside her window. Hodge called the police, and the police apprehended the Defendant. This evidence is sufficient to sustain the Defendant's conviction. This issue is without merit.

### B. Sentencing

The Defendant next contends that the trial court erred when it sentenced him. The Defendant apparently concedes that he is a career offender, but he asserts that the trial court improperly sentenced him to six years for his attempted theft conviction. The Defendant does not argue that the trial court erred when it sentenced him for his theft conviction, but, concerning the sentence for attempted theft, the Defendant argues that "the trial court erred in sentencing [the Defendant] to six (6) years as a career offender in Count 2, the conviction is for a misdemeanor offense." The Defendant then, however, asserts that since his sentence in Count 2 "influenced the overall sentence in this case," this Court should also set the sentence for theft aside. The State concedes that the trial court erred when it sentenced the Defendant for his attempted theft conviction, but it contends that the sentence for the attempted theft conviction did not influence the sentence for the theft conviction and, therefore, the sentence for theft need not be set aside.

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review

its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

In the case under submission, we conclude that the Defendant has met his burden in proving that his sentence for his attempted theft conviction is improper. Criminal attempt is an offense one classification lower that the most serious crime alleged. Tenn. Code Ann. § 39-12-107. Theft of property valued between $500 and $1,000 is a Class E felony. Tenn. Code Ann. § 39-13-105(2). Therefore, attempted theft of property valued between $500 and $1,000 is a Class A misdemeanor. The maximum sentence for a Class A misdemeanor is eleven months and twenty-nine days. Tenn. Code Ann. § 40-35-111(e)(1) (2003). Accordingly we vacate the Defendant's six year sentence for this conviction and impose a sentence of eleven months and twenty-nine days.

As to the Defendant's conviction for theft, we cannot conclude that he has met his burden of proving that his sentence is improper. The record clearly supports the trial court's finding that the Defendant is a career offender. "A 'career offender' is a defendant who has received . . . [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." Tenn. Code Ann. § 40-35-108(a)(3) (2003). Theft of property is a Class D felony if the value of the property obtained is between $1,000 and $10,000. Tenn. Code Ann. § 39-14-105(3). A defendant who is found by the trial court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III. Tenn. Code Ann. § 40-35-108(c). The maximum sentence for a Class D felony within the applicable Range III is twelve years. Tenn. Code Ann. §§ 40-35-108(c), -112(c)(4). The Defendant's presentence report indicates that the Defendant has previously been convicted of more than six prior felonies, in addition to multiple misdemeanors. Therefore, we conclude that the trial court did not err when it sentenced the Defendant to twelve years, the maximum within the applicable Range III, for his theft conviction. Furthermore, we conclude that the Defendant's improper sentence for his attempted theft conviction had no impact on his sentence for his theft conviction. Further, we order that the Defendant's sentence for attempted theft, of eleven months and twenty-nine days, run concurrently to his twelve year sentence for theft.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we conclude that sufficient evidence exists to support the Defendant's convictions for attempted theft and for theft. We conclude that the trial court erred when it sentenced the Defendant for his attempted theft conviction and, therefore, we vacate that sentence and impose a sentence of eleven months and twenty-nine days

for that conviction, to be served concurrently with the Defendant's twelve year sentence for theft. We affirm the Defendant's conviction and sentence for theft.

_____
ROBERT W. WEDEMEYER, JUDGE